Noah M. Hoagland (#11400)
Jesse C. Trentadue (#4961)
Sarah Jenkins Dewey (#15640)
*SUITTER AXLAND, PLLC*
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
nhoagland@sautah.com
jesse32@sautah.com
sjenkins@sautah.com
*Attorneys for Defendant Detective Trent Fusselman*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| JUAN MERCADO, father, heir and personal representative of JOVANY MERCADO, deceased; ROSA MERCADO, mother and heir of JOVANY MERCADO; and ESTATE OF JOVANY MERCADO, by its Personal Representative Juan Mercado,<br><br>Plaintiffs,<br><br>v.<br><br>OGDEN CITY, by and through its POLICE DEPARTMENT (OPD); OFFICERS BRANDON SEVENKSI (Officer No. 1); NIGIL BAILEY (Officer No. 2); KARSON GARCIA (Officer No. 3); JOHN POULSEN (Officer No. 4); DET. TRENT FUSSELMAN; and JOHN and JANE DOES 1-10,<br><br>Defendants. | **DEFENDANT FUSSELMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Civil No. 1:20-cv-00090-RJS-DAO<br>Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

Defendant Detective Trent Fusselman, by and through his counsel, hereby moves for a judgment on the pleadings.

This case arises out of the death of 26-year-old Jovany Mercado, who was shot and killed by Ogden City Police Officers on the evening of August 16, 2019 outside his parents' home in Ogden, Utah.  The officers were responding to a 911 call about a male apparently under the influence of drugs or alcohol who was looking into vehicles and wielding a knife.  Mercado was shot when he did not obey the officers' commands to drop the knife and continued to approach them with the weapon.

Plaintiffs are Jovany Mercado's father, Juan Mercado; his mother, Rosa Mercado; and his Estate. Defendants are Ogden Police Officers Brandon Sevenski, Karson Garcia, Nigil Bailey and John Poulsen, who were involved in the shooting (collectively "Ogden City Officers").  Also named as defendants are Ogden City and its Police Department, as well as Roy City Detective Trent Fusselman.

The *Complaint* consists of five *Causes of Action* all alleging violations of Plaintiffs' civil rights under either the federal or state *Constitutions*. The Ogden City Officers are named in the *First Cause of Action* for their alleged unlawful use of deadly force in shooting Mercado. The *Second Cause of Action* is also a federal civil rights claim directed at Ogden City and its Police Department for their alleged failure to train or

2

supervise the officers involving in Mercado's death with respect to the use of deadly force. Detective Fusselman is the sole defendant in the *Third Cause of Action*, which alleges an unlawful search of the parents' home following the shooting in violation of the Fourth Amendment because of alleged false statements made by Detective Fusselman in the Warrant Affidavit.  The *Fourth Cause of Action* claims to be brought against "All Defendants," but does not specifically name Detective Fusselman and is based upon a violation of Plaintiffs' due process rights under the United States *Constitution* for the shooting of Mercado by the Ogden City Officers.  The *Fifth Cause of Action* is likewise against "All Defendants" and is a general claim for the violation of Plaintiffs' civil rights under the Utah *Constitution*; however, the only allegation applicable to Detective Fusselman is contained in paragraph 180, which alleges an unreasonable search and seizure under the Utah *Constitution*.

Detective Fusselman had nothing to do with the shooting of Mercado.  He arrived on scene after the incident and his role was limited to obtaining a *Search Warrant* to gather evidence from the home and property of Mercado's parents and participating in that search. There was nothing false or misleading about the *Affidavit* that Detective Fusselman prepared and submitted to the Judge who ultimately issued the *Search Warrant*. Furthermore, because the search was incident to a lawful *Search Warrant,* Detective Fusselman did not, as a matter of law, violate either the United States or Utah

*Constitutions*. In addition, Detective Fusselman enjoys both qualified immunity and quasi-judicial immunity, which he pled as affirmative defenses.[1]

## MOTION AND RELIEF REQUESTED

Pursuant to *Federal Rules of Civil Procedure* 12(b)(6) and 12(c), Detective Fusselman hereby moves for judgment on the pleadings and/or to dismiss with prejudice Plaintiffs' *Third* and *Fourth Causes of Action*.  Detective Fusselman also asks that the Court dismiss with prejudice Plaintiffs' *Fifth Cause of Action* that is brought under the Utah *Constitution* or, in the alternative, decline to exercise supplemental jurisdiction. **Oral argument is requested**.

## STANDARD OF REVIEW:
## MOTION FOR JUDGMENT ON THE PLEADINGS

A *Motion for Judgment on the Pleadings* under *Rule* 12(c) and a *Motion to Dismiss* under *Rule* 12(b)(6) are evaluated under the same legal standard.[2]  The Court accepts all of the plaintiff's well-pleaded allegations as true, views those allegations in the light most favorable to the non-moving party, and likewise affords the non-movant all reasonable inferences from those allegations.[3]  In addition, under both *Rule* 12(c) and

---

[1] *Answer*, Dkt. 17 at p. 31.
[2] *See Park University Enterprises, Inc. v. American Cas. Co. Of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006*); Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009).
[3] *See Park University Enterprises, Inc.*, 442 F.3d at 1244.  *See also* Fed. R. Civ. P. 10(c) (exhibits to a pleading are a part of the pleading for all purposes).

4

*Rule* 12(b)(6), the Court considers any written documents attached to the pleadings as well as matters of which the Court can take judicial notice such as public record material.[4]  Ultimately, however, the question to be decided by the Court is whether the *Complaint* plausibly states a claim upon which relief can be granted.[5]  If it does not, then the 12(c) and/or 12(b)(6) *Motion* should be granted.[6]

## STANDARD OF REVIEW: QUALIFIED IMMUNITY

By asserting the *qualified immunity* defense, Detective Fusselman creates a rebuttable presumption that he is immune from Plaintiffs' §1983 claims.[7]  And rather than focusing on the existence of genuine disputes of material fact, the Court must determine whether the Plaintiffs' factual allegations are sufficiently grounded in the record such that they permissibly comprise the universe of fact that will serve as the foundation for answering the *legal* questions before the Court,[8] which include Detective Fusselman's entitlement to *qualified immunity*. To answer that question, the Court is required to undertake a two-part analysis: first, the Court must determine whether, under

---

[4] *See id.  See also* Fed. R. Civ. P. 10(c) (Exhibits to a pleading are a part of the pleading for all purposes).

[5] *Silver v. Glass*, 459 Fed. App'x 691, 695-96 (10th Cir. 2021) (unpublished).

[6] When the allegations in the *Complaint* do not meet this test, the Court can dismiss *sua sponte. See Curley v. Perry.* 246 F.3d 1278, 1284 (10th Cir. 2001) ("*Sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

[7] *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).

[8] *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015).

the facts alleged by the Plaintiffs, Detective Fusselman violated their constitutional rights; and second, whether the right at issue was "clearly established" at the time of Detective Fusselman's alleged misconduct.[9] The Court has the discretion to decide in which order to conduct this analysis.[10] If the material facts are not disputed, and they are not in this case, the question of *qualified immunity* "is a legal one for the Court to decide."[11] Moreover, if Plaintiffs fail to satisfy either element of their burden, the Court must grant Detective Fusselman *qualified immunity*.[12]

Whether a legal right was clearly established at the time of the alleged civil rights violation "depends substantially upon the level of generality at which the relevant 'legal rule' is to be defined."[13] The Supreme Court has rejected an overly abstract approach to this issue, which would "destroy the balance that our cases strike between the interest and vindication of citizens' constitutional rights and in public officials' effective performance of their duties."[14] Instead, it has adopted a more particularized approach about whether a right has been "clearly established," requiring that "[t]he contours of the right must be

---

[9] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[10] *Id.*

[11] *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006).

[12] *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).

[13] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[14] *Id.*

6

sufficiently clear that a reasonable official would understand that what he is doing violates the right."[15]

"This is not to say that an official action is protected . . . unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent."[16] Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as a plaintiff maintains.[17]

The doctrine of *qualified immunity* protects government officials like Detective Fusselman "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[18] *Qualified immunity* balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Thus, the protection of *qualified immunity* applies even if the government official's error was "a mistake of law, a mistake of fact, or a mistake based on mixed

---

[15] *Id.* at 640.

[16] *Id.*

[17] *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

[18] *Harlow v. Fitzgerald*, 457 U.S. 800. 818 (1982).

questions of law and fact."[19] This is known as the "objective reasonableness test," and it is met if officials of reasonable competency could disagree on the legality of the defendant's actions.[20] In other words, the defense of *qualified immunity* exists when the officer's actions are objectively reasonable in light of what he or she knew at the time of the alleged civil rights violation,[21] and an officer does not lose his or her *qualified immunity* merely because their conduct violates some state statute, department policy or administrative provision.[22]

### STANDARD OF REVIEW: QUASI-JUDICIAL IMMUNITY

Detective Fusselman has also asserted a defense of *quasi-judicial immunity.* The Tenth Circuit has held that "[j]ust as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit

---

[19] *Pearson,* 555 U.S. at 231 (citation omitted).

[20] *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

[21] *See Al-Turki v. Robinson,* 762 F.3d 1188, 1194 (10th Cir. 2014) (In determining a defendant's entitlement to *qualified immunity*, the pertinent question is what he or she knew at the time of the alleged civil rights violation); *Mays v. Rhodes,* 255 F.3d 644, 649 (8th Cir. 2001) (same).

[22] *Davis v. Sherer,* 468 U.S. 183, 194-95 (1984).  *See also Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

challenging conduct prescribed by that court order.'"[23] "Importantly, quasi-judicial immunity extends only to acts prescribed by a judge's order."[24]

The court has also "acknowledged that even assuming that an order is infirm as a matter of state law, it may be facially valid, as 'facially valid' does not mean 'lawful,' and erroneous orders can be valid."[25] In other words, the court does not require law enforcement officials to "'act as pseudo-appellate courts scrutinizing the orders of judges,'" which they are not trained to do.[26]

## STATEMENT OF FACTS

Plaintiffs' *Complaint* contains 188 paragraphs of allegations.  With respect to all of Plaintiffs' claims against Detective Fusselman, the crucial allegations are contained in paragraphs 147 through 155 of the *Complaint*.  These eight paragraphs are restated verbatim below followed by Detective Fusselman's response.

### A.   Allegations:

147.   Fusselman knowingly and intentionally supplied false and misleading information and/or omitted material information, in order to secure a warrant to search the home of Juan and Rosa Mercado.[27]

---

[23] *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990).
[24] *Id.* at 1167.
[25] *Id.* at 1165.
[26] *Id.* at 1166.
[27] *Complaint*, Dkt. 2 at ¶ 147.

148.   Fusselman either falsely swore out an affidavit of probable cause and/or omitted material facts necessary to understand the truth of the evening's events.[28]

149.   The falsehoods alleged by Fusselman in his affidavit, which secured the search warrant, included allegations that 'bullet slugs, empty shell casing, DVR and all electronic devices with the home surveillance system including digital recordings from the DVR, blood evidence, weapons including any similar like [sic] knives that the subject was holding' were '***unlawfully acquired or is unlawfully possessed***;' and have been used or is possessed for the ***purpose of being used to commit or conceal the commission of an offense; or is evidence of illegal conduct***.'[29]

150.   At the time the warrant was obtained, Fusselman knew that the bullet holes and shell casings were from the Officers' weapons, fired at Jovany, and were not evidence of any illegal conduct by the Mercados, or by Jovany, for that matter.[30]

152.   At the time Fusselman secured the warrant, he knew the evidence he sought to be gathered, particularly the home security video, was not being used or possessed 'for the purpose of being used to commit or conceal the commission of an offense.'[31]

153.   At the time the affidavit was submitted, and the warrant was obtained, Fusselman knew that the purpose of the warrant was to improperly secure footage from the Mercados' home security system that provided damning evidence of the illegal and unconstitutional use of deadly force by Officers 1-4.[32]

154.   Fusselman withheld and/or omitted to state in his affidavit for a search warrant that Officers Sevenski, Bailey, Garcia and Poulsen each had a body camera which showed the shooting, such that it was totally

---

[28] *Id.* at ¶ 148.
[29] *Id.* at ¶ 149 (quoting *Search Warrant*) (Emphasis in original).
[30] *Id.* at ¶ 150.
[31] *Id.* at ¶ 151 (quoting *Search Warrant*).
[32] *Id.* at ¶ 153.

unnecessary to seize or secure evidence from the surveillance cameras owned by the Mercados and installed in their home.[33]

155.   Fusselman's false, misleading statements and/or omissions caused a search warrant of the Mercado home[34] to be issued, which resulted in an illegal search of the Mercados' home, against their will.[35]

**B.**   **Response**:

1.   The *Warrant Affidavit*, *Search Warrant* and *Return to Search Warrant* were attached to Detective Fusselman's *Answer,* and they present an entirely different picture of the events leading to the search of the Mercado's home, including Plaintiffs' misrepresenting the contents of the *Warrant Affidavit*.

2.   For example, below is the actual language from the *Search Warrant* statements quoted by Plaintiffs in paragraph 149 of their *Complaint* with the crucial language they omitted shown in blue ink and, more importantly, the language that Plaintiffs inserted shown in red ink within brackets. This language also appears in the *Warrant Affidavit*:

**In the City of Ogden City, County of Weber, State of Utah, there is now certain property of evidence described as:**

Bullet slugs, empty shell casing, DVR and all electronic devices with the home surveillance system including digital recordings from the DVR, blood evidence, weapons including any similar like [sic] knives that the subject was holding.

**And that said property or evidence**:

---

[33] *Id.* at ¶ 154.

[34] *See* Dkt. 17-1, 17-2 and 17-3.

[35] *Id.* at ¶155.

**Was** [**were**] unlawfully acquired or is unlawfully possessed; [**and have**] **has** been used or is possessed for the purpose of being used to commit or conceal the commission of an offense; or is evidence of illegal conduct.

**Affiant believes the property and evidence described above is evidence of the crime or crimes of Aggravated Assault on a Police Office (x4)**.[36]

3.      Detective Fusselman describes in his *Warrant Affidavit* the facts of Jovany

Mercado's encounter with the Ogden City Officers that he believed to constitute an

aggravated assault upon them:[37]

On 08/16/2019 at 20:55 hours, Ogden City Police Officers were dispatched to [redacted] in Ogden City, Utah. The complainant, [redacted], called Weber County Dispatch and said a Hispanic male was looking into vehicles and had a knife in his (the Hispanic male's) possession. This male was described as in his 20's, 5'10", and wearing a blue tank top with gym shorts.

Even though the male didn't threaten anybody [with] the knife, the complainant still called Weber County Dispatch.

At 21:00 hours, four Ogden City Police Officers arrived on scene . . . . At 21:01 hours, Officers called out that they are at gunpoint with the subject. At 21:02 hours, Officers radioed that shots were fired and called for Medical. The male was bleeding profusely and was later declared deceased.

When Your Affiant arrived on scene, it was learned Officers fired twenty (20) 9mm rounds from their duty weapons at the subject. The subject was identified at [sic] [redacted]. Also found on the scene was a six inch bladed knife lying next to [redacted]. Fresh blood was seen on and around [redacted], and on and near the knife.

---

[36] *Warrant Affidavit*, Dkt. 17-1, at pp. 1-2 (emphasis added).
[37] *Id.* at 3-4.  In fact, not only did Detective Fusselman describe the evidence/property that he wanted to obtain by the *Search Warrant*, but he even described the specific location of the evidence/property.  *See id.*

12

4.      Detective Fusselman clearly states in the *Warrant Affidavit* the property and evidence that he wished to acquire, and that his purpose for obtaining these items was the fact that they were "evidence of the crime or crimes of Aggravated Assault on a Police Officer (x4)."[38]

5.      The *Search Warrant* was issued for that purpose.[39] And the *Return to Search Warrant* shows that the evidence described in the *Search Warrant* was indeed obtained, including video footage from the home security cameras and bullet slugs from the carport and home.[40]

6.      Plaintiffs do not allege that Judge Greene lacked the authority to issue the *Search Warrant*. Neither do they contend that the *Search Warrant* was facially defective.[41]

## **ARGUMENT**

### I.      **DETECTIVE FUSSELMAN IS ENTITLED TO QUALIFIED IMMUNITY.**

To answer the legal question of whether Detective Fusselman is entitled to *qualified immunity,* the Court is required to undertake a two-part analysis: first, the Court must determine whether, under the facts alleged by the Plaintiffs, Detective Fusselman

---

[38] *Id.* at 2.
[39] *See Search Warrant*, Dkt. 17-2, at pp. 1-2.
[40] *See Return to Search Warrant*, Dkt. 17-3.
[41] *See generally, Complaint*, Dkt. 2.

violated their constitutional rights; and second, whether the right at issue was "clearly established" at the time of Detective Fusselman's alleged misconduct.[42] The Court has the discretion to decide in which order to conduct this analysis.[43]

### A.    The law regarding warrants was clearly established.

The Fourth Amendment "categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'"[44] "The manifest purpose of this particularity requirement was to prevent general searches."[45] Consequently, a person's Fourth Amendment rights are violated when an officer: (1) deliberately or recklessly makes false statements or omission in a warrant affidavit, and (2) correcting the false statements or including the omissions would vitiate probable cause.[46] And "reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations" contained in the warrant affidavit.[47]

---

[42] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[43] *Id.*

[44] *Maryland v. Garrison,* 480 U.S. 79, 84 (1987) (quoting U.S. Const. Amend IV).

[45] *Id.*

[46] *Stewart v. Donges,* 915 F.2d 572, 582-83(10th Cir. 1998); *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

[47] *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990).

14

An officer's omission of facts in his or her warrant affidavit is considered to have been reckless for purpose of a civil rights violation if a reasonable person would know that it involved the type of information that a magistrate judge would wish to know when considering issuing a search warrant.[48] And "recklessness" can be inferred from the officer's omission of facts that are clearly critical to a finding of probable cause.[49]

When false statements by an officer are involved in obtaining a warrant, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents to the affidavit.[50] Where information has been omitted by an officer from his or her warrant affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still give rise to probable cause for the warrant.[51]

But whether the claim involves an officer's alleged false statements or omissions in the warrant affidavit, the court's responsibility is the same: To determine whether the warrant would still have issued had the officer fully and truthfully represented the facts.[52]

---

[48] *Stonecipher v. Valles*, 759 F.3d 1134, 1142(10th Cir. 2014).
[49] *DeLoach,* 922 F.2d at 622.
[50] *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006).
[51] *Id.*
[52] *See United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015).

Unless there is room for a difference of opinion, this question is answered by the court and not the factfinder.[53]

### B. Detective Fusselman did not violate the Mercados' Fourth Amendment rights when he completed the *Warrant Affidavit*.

Plaintiffs allege that Detective Fusselman violated their Fourth Amendment rights when he completed the *Warrant Affidavit*, stating that he "knowingly and intentionally supplied false and misleading information and/or omitted material information, in order to secure a warrant to search the home of Juan and Rosa Mercado."[54] In order to make these allegations, they quote from the *Search Warrant*, which they attached as an exhibit to their *Complaint;* however, they omit key language from the *Search Warrant* that refutes their allegations. Furthermore, they make assumptions about Detective Fusselman's *Warrant Affidavit*, which he included as an exhibit to his *Answer.*

To support their allegations, Plaintiffs quote the *Search Warrant*: "The falsehoods alleged by Fusselman in his affidavit, which secured the search warrant, include 'bullet slugs, empty shell casings, DVR and all electronic devices with the home surveillance system including digital recordings from the DVR, blood evidence, weapons including any similar like [sic] knives that the subject was holding' were '**unlawfully acquired or unlawfully possessed;**' and have 'been used or is possessed for the **purpose of being**

---

[53] *See Llaguno v. Mingy*, 763 F.3d 1560, 1565 (10th Cir. 1985).
[54] *Complaint*, Dkt. 2, ¶ 147.

**used to commit or conceal the commission of an offense; or is evidence of illegal**

**conduct**.'"[55] They allege that Detective Fusselman "knew that the bullet holes and shell

casings were from the Officers' weapons, fired at Jovany, and were not evidence of any

illegal conduct by the Mercados, or by Jovany for that matter."[56] They also allege that

Detective Fusselman knew that the home security video was not unlawfully possessed or

acquired by the Mercados.[57] They further allege that Detective Fusselman knew that the

evidence, "particularly the home security video, was not being used or possessed 'for the

purpose of being used to commit or conceal the commission of an offense.'"[58] Finally,

they allege that Detective Fusselman omitted the fact that the Ogden City Officers wore

body cameras, which they believe obviated the need for the home security video.[59]

Plaintiffs' allegations omit key language in the *Search Warrant*, specifically the

offense giving rise to the warrant. The offense in question, as identified by both the

*Search Warrant* and the *Warrant Affidavit*, was the aggravated assault by Jovany

Mercado on the four Ogden City Officers. While the bullet slugs and shell casings were

not evidence of illegal conduct by Plaintiffs or Mercado, the home security video showed

the aggravated assault and was evidence of the illegal conduct. The bullet slugs and shell

---

[55] *Id.* at ¶ 149.
[56] *Id.* at ¶ 150.
[57] *Id.* at ¶ 151.
[58] *Id.* at ¶ 152.
[59] *Id.* at ¶ 154.

casings were, however, evidence of what had taken place between Jovany and the officers and were appropriate evidence of the incident.

Plaintiffs also ignore the use of the word "or" in the list of reasons for needing to collect the evidence: "said property or evidence: Was unlawfully acquired or unlawfully possessed; has been used or is possessed for the purpose of being used to commit or conceal the commission of an offense; **or** is evidence of illegal conduct."[60] "Or" is a conjunction, used to link alternatives. In other words, the reasons given by Detective Fusselman are alternative reasons for needing the evidence—each reason does not need to apply to each piece of evidence sought. For example, it was enough that the home security video had evidence of the aggravated assault. It did not also need to be unlawfully acquired, unlawfully possessed, and used to commit or conceal an offense. So Detective Fusselman did not provide false or misleading information when he stated the warrant was to obtain property that was "unlawfully acquired or unlawfully possessed; has been used or is possessed for the purpose of being used to commit or conceal the commission of an offense; or is evidence of illegal conduct."[61]

---

[60] *Id.* at ¶ 149.

[61] In *DeLoach v. Bevers*, for example, the Tenth Circuit denied an officer qualified immunity in part because "there was evidence from which the jury could conclude that Bevers made intentional or reckless misstatements in her arrest affidavit." 922 F.2d 618, 622 (10th Cir. 1990). The affidavit stated that the defendant had told Bevers that the child who had died "had fallen on a toy Tonka truck and this was the injury to the forehead," but this report was inconsistent with the "type and magnitude of the injury found by the doctors" that ultimately killed the child. *Id.*

Not only did Detective Fusselman not provide false information, but he also did not omit material information. "The majority of the cases where the Tenth Circuit has denied qualified immunity based on material omissions from a warrant affidavit are those in which the omission undermines the primary or sole basis for probable cause."[62] Plaintiffs allege that he should have included the fact that the Ogden City Officers wore body cameras during the incident and that the home security video evidence was therefore unnecessary. But the existence of the body camera footage does not mean the home security video was not needed. Footage from the Mercados' home security cameras potentially provide a different viewpoint of the incident, increasing the possibility that Detective Fusselman and other investigating officers could know what took place that night.[63] It also shows how Jovany Mercado was behaving before the Ogden City Officers

---

The Court found that Bevers had manipulated the defendant's testimony that they only injury the child had sustained while in her care was falling on the toy—and that the fall had clearly happened before the child was more severely injured. *Id.* The Court found that Bevers "deliberately slanted the facts by misstatements and omissions to help persuade the magistrate to issue the warrant." *Id.* at 624. Detective Fusselman clearly did not make any such misstatements but presented the facts as he knew them.

[62] *Cruz v. City of Albuquerque,* , 2019 WL 1085160, at *14 (D.N.M. March 6, 2019) (citing *Stewart v. Donges*, 915 F.2d 572, 583 (10th Cir. 1990) ("[W]e can conceive of few omissions which would be more material than the failure to disclose that the main complainant had recanted his testimony and confessed it was a fabrication."); *Bruning v. Pixler*, 949 F.2d 352, 359 (10th Cir. 1991) ("[T]he omissions here directly undermine Victim #1's alleged identification of Plaintiff as her assailant. That identification was virtually the only evidence linking Plaintiff to either of the assaults, and without it, there would be no probable cause to believe Plaintiff was the assailant.").

[63] In his *Warrant Affidavit*, which Detective Fusselman included with his *Answer*, Detective Fusselman indicated that he was a member of the Officer Involved Shooting Investigation Team.

arrived on scene, providing evidence to support the complainant's report. Furthermore, there is no United States Supreme Court or Tenth Circuit Court of Appeals precedent holding that an officer must include in his or her warrant affidavit information about other sources for some but perhaps not all of the evidence.

Detective Fusselman did not provide false information in applying for the *Search Warrant* and he did not omit material information. He therefore did not violate Plaintiffs' Fourth Amendment rights and is accordingly entitled to *qualified immunity*. Plaintiffs' claims against Detective Fusselman should be dismissed.

## II.   DETECTIVE FUSSELMAN IS ENTITLED TO QUASI-JUDICIAL IMMUNITY.

Detective Fusselman is also entitled to quasi-judicial immunity to the extent that Plaintiffs' allegations address the search of their property. "[O]fficials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that court order."[64] The Tenth Circuit has noted that this extends to warrants.[65] Quasi-judicial immunity extends to

---

*See* Dkt. 17, p. 2. While the *Complaint* focuses on the aggravated assault, it is reasonable from the facts presented in the *Complaint* and the documents attached to the pleadings to conclude that Detective Fusselman's *Warrant Affidavit* and the subsequent *Search Warrant* was to investigate the incident as a whole.

[64] *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990).

[65] *See id.*

officials acting within the scope of their jurisdiction and "only to acts prescribed by the judge's order."[66] In *Moss v. Kopp*, plaintiffs alleged that two Salt Lake County sheriff's deputies participated on an illegal search of a residence pursuant to court orders issued in a civil case.[67] Plaintiffs argued that executing the court orders violated their Fourth Amendment rights and sued under 42 U.S.C. § 1983. The Tenth Circuit held, "Even if the court orders here are unlawful, several considerations demonstrate that the orders did not reach the level of illegality necessary to render them *facially* invalid for purposes of quasi-judicial immunity and to justify imposing liability on the deputies . . .."[68] These considerations included the deputies' general knowledge of a warrant, but lack of "formal legal education" to evaluate the court orders. The Court also held that the officers acted within their jurisdiction and that their actions did not exceed the court orders.[69]

Detective Fusselman executed a facially valid search warrant within the scope of his jurisdiction. There are no allegations that he searched for or obtained any evidence outside of what was addressed in the warrant. The warrant specified bullet slugs in the carport and home, as well as DVR footage from the home security system. This is what Detective Fusselman obtained according to the *Return to Search Warrant.* Accordingly,

---

[66] *Id.* at 1167.
[67] *Id.* at 1159.
[68] *Id.* at 1166.
[69] *Id.* at 1167.

Detective Fusselman is entitled to quasi-judicial immunity and Plaintiffs' causes of action against him should be dismissed.

### III.   PLAINTIFFS CANNOT MAINTAIN A SUBSTANTIVE DUE PROCESS CLAIM BASED ON THE ALLEGED VIOLATIONS OF THEIR FOURTH AMENDMENT RIGHTS.

Plaintiffs' *Fourth Cause of Action* alleges the violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. Although they name "all Defendants," the acts described in this cause of action only encompass the Ogden City Officers' encounter with Jovany Mercado. To the extent that the *Fourth Cause of Action* extends to Detective Fusselman, it should be dismissed, as "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[70] Plaintiffs' allegations regarding Detective Fusselman are specific to the Fourth Amendment's warrant requirements, as described above, and therefore they cannot maintain a separate cause of action against him for violation of substantive due process.[71]

---

[70] *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (cleaned up).

[71] Detective Fusselman hereby joins and incorporates by reference the Ogden City Defendants' arguments on this matter. *See Ogden Defendants' Motion for Judgment on the Pleadings*, dkt no. 27, pp. 27-28.

IV.   **PLAINTIFFS' UTAH CONSTITUTIONAL CLAIMS FAIL BECAUSE THE ALLEGATIONS DO NOT ESTABLISH FLAGRANT VIOLATIONS OF JOVANY'S CONSTITUTIONAL RIGHTS.**

Plaintiffs' Utah Constitutional claims must fail, as they do not allege a flagrant violation of Jovany Mercado's state constitutional rights.[72] The "common law gives Utah courts the authority to accord an appropriate remedy to one injured from the violation of a constitutional right,"[73] as "the Utah Code does not include a statute akin to 42 U.S.C. §1983."[74] "In order to recover damages for the violation of a constitutional provision . . ., a plaintiff must clear two hurdles."[75] "First, the plaintiff must prove that the constitutional provision is 'self-executing.'"[76] "Next, a plaintiff must establish the following three elements: (1) the plaintiff suffered a 'flagrant' violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[77]

---

[72] Detective Fusselman hereby joins and incorporates by reference the Ogden City Defendants' arguments regarding Plaintiffs' claims under the Utah Constitution. *See Ogden Defendants' Motion for Judgment on the Pleadings*, dkt. 27, pp. 35-39.

[73] *Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶ 57, 250 P.3d 465 (citing *Spackman ex rel. Spackman v. Board of Education,* 2000 UT 87, 16 P.3d 533).

[74] *Id.*

[75] *Id.* at ¶ 58.

[76] *Id.*

[77] *Id.*

Plaintiffs allege violations of Article I, sections 1, 6, 7, 14, and 25 of the Utah Constitution. Article I, sections 1, 7, and 14 are self-executing.[78] No court has addressed whether section 6 is self-executing. And section 25 is not self-executing.[79] Because section 25 is not self-executing, Plaintiffs cannot recover for an alleged violation under section 25.

As for the second prong of the analysis, Plaintiffs have not alleged "flagrant violations" of sections 1, 6, 7, and 14. "The test measuring the flagrance of a state constitutional violation is the same test which determines qualified immunity under §1983."[80] So the "flagrant violation" element is satisfied only if "the conduct violates clearly established constitutional rights of which a reasonable person would have known."[81] Specific to Detective Fusselman is the alleged violation of section 14, which protects against unreasonable search and seizure. As addressed above, Detective Fusselman did not violate Plaintiffs' clearly established constitutional rights when he completed the *Warrant Affidavit* or when he executed the facially valid warrant. Accordingly, Plaintiffs' state constitutional claims should be dismissed.

---

[78] *See Jensen,* 2011 UT 17, ¶ 61.
[79] *See P.J. ex rel. Jensen v. Utah*, No. 2:05-CV-00739, 2006 WL 1702585, at *14 (D. Utah, June 16, 2006).
[80] *Cardall v. Thompson,* 845 F. Supp. 2d 1182, 1197 (D. Utah 2012).
[81] *Id.*

In the alternative, this Court should decline to exercise jurisdiction over Plaintiffs' state law claims. As discussed above, this Court should dismiss the federal causes of action brought by Plaintiffs. The Tenth Circuit has held that "[w]hen all federal law claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[82] If Plaintiffs' federal law claims are dismissed, the Court should either dismiss the state constitutional claims for failure to allege a "flagrant violation" of the state constitution or decline to exercise jurisdiction over those claims.

## CONCLUSION

Detective Fusselman is entitled to qualified immunity and quasi-judicial immunity. He did not violate Plaintiffs' Fourth Amendment rights when he completed the *Warrant Affidavit*, as he did not make false statements or omit material information. Furthermore, he did not violate their rights when he executed the facially valid warrant. Accordingly, Plaintiffs' *Third* and *Fourth Causes of Action* should be dismissed with prejudice. Similarly, Detective Fusselman did not flagrantly violate Jovany Mercado's state constitutional rights, particularly as they pertain to Article I, section 14. The state constitutional claims should also be dismissed or, in the alternative, this Court should decline to exercise jurisdiction over them.

---

[82] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).

DATED this 2nd day of March, 2021.

SUITTER AXLAND, PLLC

By:  /s/ jesse c. trentadue
Noah M. Hoagland
Jesse C. Trentadue
Sarah Jenkins Dewey
*Attorneys for Defendant Detective Trent Fusselman*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 2nd day of March, 2021, I electronically filed

the foregoing **MOTION** with the Clerk of the Court using the CM/ECF system, which

sent electronic notification to the following parties:

Robert B. Sykes
Christina Dawn Isom
Christopher Peter Sorensen
Sykes McAllister Law Offices
311 South State Street, Suite 240
Salt Lake City, Utah 84111-2320
*Attorneys for Plaintiffs*

Danica N. Cepernich
Heather S. White
Snow Christensen & Martineau
10 Exchange Place 11th Floor
P.O. Box 45000
Salt Lake City, Utah 84145-5000
*Attorneys for Defendants Ogden City
Police Department, Brandon Sevenski,
Nigil Bailey, Karson Garcia, and John
Poulsen*

Mario A. Arras
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
*Attorney for Plaintiffs*

   /s/ jesse c. trentadue