Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
SYKES MCALLISTER LAW OFFICES, PLLC
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com

Mario Arras (#13036)
MARIO ARRAS LAW FIRM, PLLC
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
Telephone No. (801) 635-0403
AttorneyMarioArras@Gmail.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| JUAN MERCADO, father, heir and personal representative of JOVANY MERCADO, deceased; ROSA MERCADO, mother and heir of JOVANY MERCADO; and ESTATE OF JOVANY MERCADO, by its Personal Representative Juan Mercado,<br><br>Plaintiffs,<br><br>vs.<br><br>OGDEN CITY, by and through its POLICE DEPARTMENT (OPD); OFFICERS BRANDON SEVENSKI (Officer No. 1); NIGIL BAILEY (Officer No. 2); KARSON GARCIA (Officer No. 3); JOHN POULSEN (Officer No. 4); DET. TRENT FUSSELMAN; and JOHN and JANE DOES 1-10,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DETECTIVE FUSSELMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 1:20CV90 RJS-DAO<br><br>Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

1

This Response opposes Defendant Fusselman's Motion for Judgment on the Pleadings, Doc. 39, filed on March 2, 2021.

## BACKGROUND

## KEY FACTS RELEVANT TO THIS OPPOSITION
(All references are to the Complaint, Doc. 2)

1. On August 16, 2019, Jovany Mercado was shot and killed in the driveway of his home by Ogden City Police Officers Sevenski, Bailey, Garcia, and Poulsen. Doc. 2 ¶¶17, 66.

2. On August 17, 2019, at 1:07 a.m., Defendant Fusselman, a Detective of the Roy City Police Department (RPD), submitted an Affidavit for Search Warrant to obtain:

> ***Bullet slugs***, empty ***shell casings***, DVR and all electronic devices with the home ***surveillance system*** including digital recordings from the DVR, blood evidence, ***weapons*** including any similar like knives that the subject was holding.

from Plaintiffs' residence, pursuant to an investigation of the shooting of Jovany Mercado on August 16, 2019. Doc. 2 ¶¶96, 100, 149 (emphasis added).

3. Several blatantly false statements and material omissions were used to illegally obtain a search warrant ***without probable cause***. *Id*. at ¶¶97,101 (emphasis added).

4. Fusselman falsely swore in his Affidavit that this evidence was "***unlawfully acquired*** or is ***unlawfully possessed***"; and had "been used or is possessed for the ***purpose of being used to commit*** or ***conceal the commission of an offense***; or ***is evidence of illegal conduct***." *Id.* at ¶100 (emphasis added).

5. In his Affidavit for Search Warrant, Detective Fusselman knowingly or recklessly included false information in order to secure a warrant to search the home of Juan and Rosa Mercado. Doc. 2 ¶147.

6. Fusselman's purpose was to illegally seize Mercados' surveillance system, which showed the unconstitutional use of deadly force by the Defendants. *Id.* at ¶99.

7. At the time Fusselman secured the warrant, he knew the evidence he sought to gather, particularly the home security video, was not being used or possessed "for the purpose of being used to commit or conceal the commission of an offense." *Id.* at ¶152.

8. Fusselman withheld and/or omitted to state in his Affidavit for Search Warrant that Officers Sevenski, Bailey, Garcia, and Poulsen each had a body camera which showed the shooting, such that it was totally unnecessary to seize or secure evidence from the surveillance cameras owned by the Mercados and installed in their home. *Id.* at ¶154.

9. Fusselman's false, misleading statements and/or omissions caused a search warrant of the Mercado home to be issued, which resulted in an illegal search of the Mercados' home, against their will. *Id.* at ¶155.

10. As a result of the falsified warrant, Officers illegally forced their way into the Mercado home. *Id*. at ¶98.

11. The ostensible reason was to obtain bullets from the Mercados' home, but the real reason was to illegally obtain the video footage of the shooting as recorded by Plaintiffs' home security system. *Id*. at ¶99.

12. Among several falsehoods, the illegal warrant states the Mercado family "illegally" obtained footage of the shooting. *Id*. at ¶100.

## STANDARD OF REVIEW

Motions for Judgment on the Pleadings (MJP) under Rule 12(c) are treated the same as "a motion to dismiss under Rule 12(b)(6)." *Cummings v. Dean,* 913 F.3d 1227, 1238 (10th Cir.

3

2019). On a Motion to Dismiss under 12(b)(6), the facts asserted in the complaint must be taken as true. *See, e.g., Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). In order to survive the motion, the facts in the complaint must be sufficient to establish "a claim to relief that is plausible on its face." *Dorf v. Bjorklund*, 531 Fed. App'x 836, 837 (10th Cir. 2013). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts must support "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"In reviewing a motion to dismiss, all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party. " *Brown v. Montoya,* 662 F.3d 1152, 1162 (10th Cir. 2011) (internal punctuation and citations omitted). The *Brown* court cites two well-known U.S. Supreme Court precedents for this proposition, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Iqbal, supra. Brown* cites the *Iqbal* test as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible on its face***. A claim has facial plausibility when the plaintiff pleads factual content that ***allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged***.

*Iqbal,* 556 U.S. at 678, as cited in *Brown*, 662 F.3d at 1163 (emphasis added) (internal citations omitted). In 2016, the Tenth Circuit reaffirmed: "In reviewing a motion to dismiss, we ***accept the facts alleged in the complaint as true*** and view them in the light most favorable to the plaintiff." *Mayfield,* 826 F.3d at 1255 (emphasis added).

# ARGUMENT

## POINT I

### ~ *Qualified Immunity Does Not Apply* ~

A. **Qualified Immunity Does Not Apply.**

Detective Fusselman claims qualified immunity for his actions in falsifying his Affidavit to illegally obtain evidence. But qualified immunity is not available for false affidavits. The United States Supreme Court has held that the veracity of an affidavit supporting a search warrant may be challenged if it contains falsehoods or omissions. *Franks v. Delaware,* 438 U.S. 154 (1978). Additionally, the Tenth Circuit has explained it is a "clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an . . . affidavit information which, if included, would . . . vitiate[] probable cause." *Stewart v. Donges,* 915 F.2d 572, 582-83 (10th Cir. 1990).

"Qualified Immunity provides immunity from suit rather than a mere defense to liability." *Harper v. Rose,* 2012 WL 1150463, *3 (D. Utah 2012) (citations and internal punctuation omitted). In order to overcome qualified immunity for a police officer, a two-pronged inquiry must be made. First, the facts, "[t]aken in the light most favorable to the party asserting the injury, [must] show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, that right must be "'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). The prongs need not be analyzed in a specific order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is "clearly established" when the action of violating that right is such that a reasonable person would have known that it is against the law. *Tolan,* 572 U.S. at 656. "Officials

can still be on notice that their conduct violates established law even in novel factual circumstances." *Handy v. City of Sheridan,* 636 Fed. App'x 728, 738 (10th Cir. 2016) (quoting *Quinn v. Young,* 780 F.3d 998, 1005 (10th Cir. 2015)). The Supreme Court has held that a generalization of the law is insufficient for this prong to be established, but rather that the inquiry "must be undertaken in light of the specific context of the case." *Saucier,* 533 U.S. at 201. However, the Court "expressly rejected a requirement that previous cases be fundamentally similar. [T]he salient question. . . is whether the state of the law. . . gave [defendants] fair warning." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

Detective Fusselman is not entitled to dismissal of the §1983 claim. Sufficient well pleaded facts have been asserted to demonstrate that he violated the Mercados' clearly established rights to be free from unreasonable searches by falsifying or omitting material information in his Affidavit to obtain the search warrant. That right was clearly established at the time he falsified and misrepresented information to obtain a search warrant because case law existed which established these rights beyond mere generalities. *See, Franks v. Delaware,* 438 U.S. 154 (1978); *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

### B. It is Clearly Established that an Officer Can Not Falsify Information in an Affidavit for Search Warrant.

Defendant admits that the law regarding falsification or omissions in warrants was clearly established on August 16, 2019, stating:

> The Fourth Amendment "categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison,* 480 U.S. 79, 84 (1987) (quoting U.S. Const. Amend IV). "The manifest purpose of this particularity requirement was to prevent general searches." *Id.* Consequently, a person's Fourth Amendment rights are violated when an officer: (1) deliberately or recklessly makes false statements or omission[s] in a warrant affidavit, and (2) correcting the false statements or

6

including the omissions would vitiate probable cause." *Stewart v. Donges,* 915 F.2d 572, 582-83 (10th Cir. 1998); *see also Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).

Doc. 39 p.14.

Thus, it is not contested that the law was clearly established on August 17, 2019 that Detective Fusselman could not seek a search warrant without legitimate, supportable probable cause, and that he could not omit or falsify information in an application for search warrant in order to obtain said warrant.

### C. <u>Omitted and Falsified Information to Obtain the Search Warrant</u>.

Defendant argues "Detective Fusselman did not provide false information in applying for the *Search Warrant* and he did not omit material information." Doc. 39 p.20. This assertion is contrary to the Complaint which alleges "Fusselman ***knowingly and intentionally supplied false*** and misleading information ***and/or omitted material information***, in order to secure a warrant to search the home of Juan and Rosa Mercado." Doc. 2 ¶147 (emphasis added).

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Dalton,* 918 F.3d 1117, 1127 (10th Cir. 2019) (internal quotations and citations omitted). Probable cause "must be supported by facts contained in the affidavit." *U.S. v. Richard*, 350 Fed. App'x. 252, 257 (10th Cir. 2009). Those facts must encompass "the totality of the information" available to an officer. *Id.* The Fourth Amendment requires police officers to demonstrate candor when seeking warrants. Material misstatements and/or omissions intended to influence a judge's perceptions of an incident invalidate warrants. *Franks v. Delaware,* 438 U.S. 154 (1978). A court must add in omitted

material facts and assess the affidavit thereafter. *United States v. Herrera,* 782 F.3d 571, 573 (10th Cir. 2015) (citations omitted).

In order to establish reckless disregard in the presentation of information to a magistrate, there must exist evidence that the officer entertained serious doubts as to the truth of the allegations. *Stonecipher v. Valles,* 759 F.3d 1134, 1142 (10th Cir. 2014). The test for "reckless disregard" is simple: "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known . . . was **the kind of thing the judge would wish to know**." *Wilson v. Russo,* 212 F.3d 781, 787-88 (3d Cir. 2000) (emphasis added).

A "factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Stonecipher,* 759 F.3d at 1142. It may also be inferred "from omission of facts which are clearly critical to a finding of probable cause." *DeLoach v. Bevers,* 922 F.2d 618, 622 (10th Cir. 1990) (internal quotations omitted). Circumstantial evidence that an officer had clear access to evidence which counters the affidavit statements fall into the "must have known" category, which may be enough for a reasonable jury to find actual knowledge, or that the officer entertained serious doubts about their truth, satisfying the reckless disregard standard. *See Sanchez v. Hartley,* 299 F.Supp.3d 1166, 1197-98 (D. Colo. 2017).

Knowing that he might not get the warrant otherwise, Fusselman kept from the magistrate judge "the totality of the circumstances." *United State v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001). Given the misleading information provided by Fusselman regarding the events of August 17, 2019, there was no way to "ensur[e] that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* Had the magistrate judge been given a full explanation of the facts, it is unlikely he would have issued the warrant without further review.

### D. The *Hemingway* Case and "Jarring" Omissions.

In *Hemingway v. Russo,* WL 4082201 (D. Utah 2018) (Judge Parrish) (unpublished), detectives from the Cottonwood Police Department conducted a surveillance on one Misty Italasano. Italasano lived in a basement apartment of a home owned by the Plaintiff, Trudy Hemingway. Italasano's downstairs residence was separated from the rest of the home by a door and several pieces of furniture. The door remained closed and locked by a double-sided deadbolt that required a key to unlock. The only other entrance to Italasano's residence was an exterior basement door that was on the side of the house. *Id.* at *2.

Detective McHugh conducted surveillance on the residence for approximately *one month* because Italasano was suspected of selling meth out of her residence. McHugh surveilled the home almost daily. Only one time did McHugh watch Italasano enter the front door, which she then exited about ten minutes later. On all other occasions, McHugh only observed Italasano enter the residence by walking through the side gate, down the stairs on the side of the house which led to the basement door and the apartment where she lived. McHugh knew that other residents were in the building, and those persons were not suspected in drug activity. They came and went through the front entrance, never from the basement door that Italasano used. All of this made clear that the residence was in fact a *multifamily residence* and that Italasano was living in a *basement apartment*. *Id.* at *3.

Comparable to the Defendants in *Hemingway*, Fusselman knew that he was investigating an Officer involved shooting. Fusselman undoubtedly had access to the OPD body cameras, so he knew that Jovany was shot in his own driveway while walking toward the Officers, as he was commanded. Doc. 2 ¶¶44, 62 66. Fusselman had interviewed the Officers on the scene

and was aware of the critical "totality" of the facts. Fusselman also knew that Jovany had not assaulted the OPD Officers as Fusselman later claimed. Lastly, Fusselman knew that all Officers were wearing body cameras at the time of the incident and so the need for the Mercados' home surveillance footage was unnecessary, especially just a few hours after their son had been shot and killed in their own driveway.

The defendants in *Hemingway*, submitted an affidavit for a search warrant which omitted thirteen (13) key facts suggesting that persons other than Italasano lived at the residence. Similarly, Detective Fusselman's Affidavit for Search Warrant omitted six (6) key facts: (a) that Jovany was shot and killed by Ogden Police Officers, (b) that the bullet holes and shell casings were from the Officers' weapons, fired at Jovany, and were not evidence of any illegal conduct by the Mercados, or by Jovany, (c) that the home security video, was not "unlawfully acquired" or "unlawfully possessed" by the Mercados; (d) that the video footage was not being possessed "for the purpose of being used to commit or conceal the commission of an offense," (e) that the DVR recordings were not, on their own, "evidence of a crime," and (f) that the purpose of the warrant was to improperly secure footage from the Mercados' home security system that provided damning evidence of the illegal unconstitutional use of deadly force by OPD Officers. Doc. 2, ¶¶150-153. There is a reasonable inference that each of these facts was knowingly omitted and was material information that a magistrate would want to know before issuing a search warrant.

The *Hemingway* court noted that McHugh had characterized the Hemingway residence as "a single-family residence." *Hemingway,* p.*3. However, "McHugh's affidavit is notable for what it did not include. It omitted entirely any indication that Hemingway and her sons lived at the Taylorsville Residence. It also omitted any indication that Italasano's basement

10

residence was a separate unit. Specifically, the affidavit omitted the following information known to McHugh." *Id.*

The *Hemingway* court lists 13 specific pieces of information omitted from the McHugh affidavit, all of which were significant. *Id.* Among some of the prominent omissions were that Trudy Hemingway owned the Taylorsville residence and lived there, that her adult sons also lived there, that the home had two apparently well-used entrances (one in the front and one in the side), that the main suspect was living in the basement, and a second suspect was also in the basement. *Id.* It also omitted the fact that the basement had a kitchen and a bedroom, that surveillance was conducted for nearly a month, that the Hemingway family was not suspected of drug activity, that vehicles parked at the home were registered to the Hemingways, that all short stay traffic associated with the suspected drug activity entered through the basement apartment, and that the suspect always exited through the basement apartment. *Id.* These omissions left a false impression. "In short, McHugh's affidavit did not include any information that would have suggested that anyone other than Italasano and Magalogo lived at the Taylorsville Residence." *Hemingway,* *4. The court then noted, "[b]ut ***his affidavit inexplicably and jarringly omitted*** where, exactly, the south side door led. It led to Italasano's basement home – a fact McHugh knew when he drafted the affidavit." *Id.,* *4 (emphasis added).

Similarly, "inexplicably and jarringly," Det. Fusselman omitted from his August 17, 2019 Affidavit important facts for this case: he was investigating an Officer involved shooting that resulted in Jovany Mercado being killed in his own driveway. Fusselman had nothing to suggest that Jovany had committed any crime, much less that "property and evidence described [in the Affidavit] was evidence of the crime or crimes of Aggravated Assault on a Police Officer,"

11

or that the Mercados had obtained the bullets and surveillance footage illegally. Doc. 2, ¶¶150-153. Fusselman's Affidavit not only omitted that Jovany was killed by Officers, but also falsely stated that Jovany "assaulted" Officers, and that the Mercados had somehow obtained the video surveillance, and bullet slugs in their home "unlawfully."

Lastly, it is very "jarring" that Det. Fusselman also *omitted* that all four Officers were wearing body cameras. The Affidavit of August 17, 2019 left a false impression that the Mercados somehow possessed the only footage of the events that night. As with Officer McHugh in *Hemingway*, Fusselman purposefully omitted and misstated information in the Affidavit in order to obtain a broad search warrant for the Mercados' property, including their home. This was a violation of the Mercados' rights.

### E. **Illegal Search**.

In *Hemingway,* because of falsehoods and omissions in the search warrant affidavit, officers took a battering ram to the front door and took the innocent Hemingways into custody and handcuffed them. Two of her sons remained handcuffed for hours. *Hemingway,* *4. While the outcome of the search was not as egregious in the case *sub judice*, the principal is still the same. Because of Fusselman's improper Affidavit, Juan and Rosa Mercado were forced to endure an illegal search of their home after having their son shot in their driveway just hours before. This is shocking.

### F. **It is Well Established that a Deliberate or Reckless Omission Violates the Fourth Amendment, so Qualified Immunity is Unavailable**.

Qualified immunity is not available where Det. Fusselman knowingly violated a well-established right to be free from a search conducted without probable cause.

The *Hemingway* court posed the question about whether McHugh's affidavit "deliberately omitted information from the affidavit that tended to show that the residence was not a single-family residence." *Hemingway,* *7. In *Mercado,* a similar question is "Did Det. Fusselman deliberately omit information that *inter alia* four Ogden Police Officers used excessive deadly force to kill Jovany Mercado in his own driveway?" Similarly, "Did Det. Fusselman falsify information that Mercados had illegally obtained their own video surveillance footage? These "inexplicabl[e] and jarring[]" omissions and falsehoods include failing to disclose that Det. Fusselman was actually investigating an officer involved shooting, where four OPD Officers were all wearing body cameras showing that they essentially executed Jovany Mercado in his own driveway.

The *Hemingway* court addresses whether omissions and false statements in that case violate a constitutional right. *Hemingway,* *7. The applicable rule is:

> A person's Fourth Amendment rights are violated when an officer: (1) deliberately or recklessly makes false statements or omissions in a warrant affidavit, and (2) correcting the false statements or including the omissions would have vitiated probable cause.

*Hemingway,* *7 (citing *Stewart v. Donges,* 915 F.2d 572, 582–83 (10th Cir. 1998); *see also Franks v. Delaware,* 438 U.S. 154, 155–56 (1978)); *Puller v. Baca,* 781 F.3d 1190, 1197 (10th Cir. 2015); and *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir. 1996).

The *Hemingway* court then explained that there was "significant evidence in the record" to support the assertion that McHugh knew that the residence was not a single-family home. "Therefore, describing the home as a 'single family residence' in the affidavit constituted a knowing and intentional misstatement." *Hemingway,* *7.

13

The *Hemingway* court further notes that even if McHugh did not make the false statement knowingly and deliberately, "there is evidence in the record to support the finding that he acted with **<u>reckless</u> disregard for the truth.**" *Id.* (emphasis and <u>double</u> emphasis added).

> A reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, and ***a factfinder may infer reckless disregard*** from circumstances evincing obvious reasons to doubt the veracity of the allegations.

*DeLoach v. Bevers,* 922 F.2d 618, 622 (10th Cir. 1990) (citations and alterations omitted), as cited in *Hemingway,* \*7 (emphasis added). *Hemingway* noted that McHugh has "omitted all indicia of separate residences. Nowhere in his affidavit did he mention Hemingway or her sons. Nowhere did he indicate that there were two well-used entrances to the Taylorsville Residence. Nowhere did he disclose that Italasano and Magalogo, the subjects of his investigation, used only one of those entrances to conduct suspected drug transactions." *Hemingway,* \*8. The court then held that, "McHugh's affidavit, viewed in the light most favorable to Plaintiffs, seems ***specifically crafted to mislead the magistrate.***" *Id.*

Likewise, in *Mercado,* Det. Fusselman does not mention in his affidavit that the officers shot Jovany, that Jovany died as a result of that shooting, that all four Officers were wearing body cameras, or that the surveillance cameras on the Mercado residence were not obtained illegally. These aforementioned false statements and omissions seem "specifically crafted to mislead the magistrate." *Id.*

### G. <u>A Reasonable Magistrate Would be Misled</u>.

The *Hemingway* court noted that an otherwise uninformed reader would be led to believe that Italasano and Magalogo had run of the residence, that they were the sole residents and they simply entered the building through a side door, "but McHugh knew otherwise." *Id.* Failure

14

to disclose this information suggested "that McHugh's omissions were knowing and deliberate." *Id.*

Likewise, the ordinary judicial reader of the Fusselman Affidavit would be left with a one-sided impression that the matter only involves Jovany's alleged committing of a crime against the officers. A totally different picture obviously would have presented itself had the omitted information been disclosed. The signing judge would then have known that Jovany Mercado had been shot and killed in his own driveway, that he never attacked Officers, that the bullet slugs and shell casings were the result of the Officers' actions, and that the Mercados' home surveillance footage could not have been "unlawfully acquired" or possessed. It is "jarring" that Det. Fusselman omitted and/or falsified this information in order to get the search warrant. The *Hemingway* court further noted that, "even if McHugh's omissions were not made knowingly, a jury could conclude they were made ***recklessly***." *Hemingway,* *8 (emphasis added). Likewise, in *Mercado*, a jury could readily conclude that Fusselman's omissions were, at a minimum, reckless, if not intentional.

### I. Inserting Omitted Information Vitiates Probable Cause.

*Hemingway* noted that by omitting what he did from the affidavit, "McHugh presented to the magistrate a picture of an entire building being used for drug trafficking, when the evidence available to him suggested only a portion of the building being used for that purpose."

> A ***reasonable person would know*** these omissions involved the type of information a ***magistrate would wish to know*** when considering a search warrant. *See Stonecipher v. Valles,* 759 F.3d 1134, 1142 (10th Cir. 2014) (citing *Wilson v. Russo,* 212 F.3d 781, 787–88 (3d Cir. 2000) (holding that "omissions are made with ***reckless disregard*** if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know")); *see also DeLoach,* 922 F.2d at 622 ("***Recklessness may be inferred*** from omission of facts which are 'clearly critical' to a finding of probable cause.") (citing

15

*Hale v. Fish,* 899 F.2d 390, 400 (5th Cir. 1990); *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir. 1986)).

*Hemingway,* *8 (citations and punctuation in original; emphasis added).

The *Hemingway* court noted that McHugh "knowingly or recklessly made a misstatement and omissions." *Hemingway,* *8. It then asked the questions whether amending the false statement and omissions would have "vitiated probable cause to search the entire Taylorsville residence." *Id.* As previously noted, Tenth Circuit law requires omitted information to be reinserted to see if there is still probable cause for a search warrant. *Id.* Simply put, the question is, with an amended affidavit does there still exist a fair probability that contraband or evidence of a crime would be found? *Id.*

The *Hemingway* court further noted that the issue of probable cause is ordinarily for a judge. "[B]ut where the issue arises in a damage suit, it is . . . a proper issue for the jury if there is room for a difference of opinion." *Hemingway,* *8 (citations omitted). *Hemingway* held that there was room for a difference of opinion regarding whether a remedied affidavit would have demonstrated probable cause to search the Taylorsville residence or not. Because this was a summary judgment motion, the court construed the facts in favor of the plaintiff, and concluded that "McHugh's false statements and ***omissions, if amended and included, would have vitiated probable cause*** to search the main floor of the Taylorsville Residence. Therefore, the misstatement and omissions were material, and Plaintiffs have established that McHugh violated their Fourth Amendment rights." *Hemingway,* *8 (emphasis added).

In *Mercado,* a fair reading of the omissions to the Affidavit for Search Warrant submitted by Fusselman clearly suggest that the omissions were knowing and deliberate and critical to probable cause, just like in the *Hemingway* case. Defendant Fusselman piously decries

16

such a conclusion. He claims that there was probable cause even if this omitted information was included. But Fusselman withheld information that a reasonable detective would have known was the kind of thing a judge would want to know, i.e. that an existing home surveillance system had probably captured an officer involved shooting where Jovany Mercado was shot in his own driveway, holding only a pocketknife, and that Jovany made no aggressive moves toward the Officers. Fusselman's recklessness can be inferred from the omission and misrepresentation of facts that are clearly critical to a finding of probable cause. It is almost certain no warrant would have issued had the judge known "the totality" of these facts because that "totality" would have vitiated Fusselman's probable cause argument.

Defendant Fusselman erroneously claims that the Search Warrant was necessary in order to obtain evidence of an "aggravated assault by Jovany Mercado on the four Ogden City Officers." Doc. 39 p. 17. This is incorrect. Detective Fusselman falsely misstated this information in order to obtain the search warrant. Jovany was walking in his own driveway toward officers, as he had been commanded to do. He met none of the requirements under Utah law to be accused of "Aggravated Assault of a Police Officer. The Affidavit for Search Warrant omits any mention of these facts. Nor does the Affidavit state that "bullet slugs, empty shell casings, . . . digital recordings . . . [and] blood" were the result of an Officer involved shooting incident where Jovany Mercado was killed. This information would be the "kind of thing the judge would wish to know." *Wilson,* 212 F.3d at 787-88. As the well-pleaded facts state in the Complaint, "Fusselman's false, misleading statements and/or omissions caused a search warrant of the Mercado home to be issued, which resulted in an illegal search of the Mercado's home, against their will." Doc. 2 ¶156.

Defendant admits that the law regarding warrants was clearly established at the time this violation occurred. Doc. 39 p.14. Thus, because this is a Motion for Judgment on the Pleadings, the Court is required to take the Plaintiffs' well-pleaded facts as true. *Cummings,* 913 F.3d at 1238. The Plaintiffs have pleaded that Detective Fusselman "knowingly and intentionally supplied false and misleading information and/or omitted material information, in order to secure a warrant to search the home of Juan and Rosa Mercado." *See* Doc. 2 ¶147. The Court must accept that well-pleaded fact. Defendant Fusselman tries to persuade the Court to go down a rabbit hole analysis that takes into consideration contested facts. But this is not the standard on a Motion for Judgment on the Pleadings.

The Court must accept the well-pleaded facts in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham,* 265 F.3d at 1149. The issues that Defendant Fusselman raises show that there are material questions of fact that should be decided by a jury, but not before discovery has been allowed to be conducted.

## POINT II

### *~ Quasi-Judicial Immunity Does Not Apply ~*

**A.    Quasi-Judicial Immunity Does Not Apply.**

Defendant Fusselman claims "quasi-judicial immunity." Doc. 39 p. 20-22. Quasi-judicial immunity is available to officials acting within the scope of their jurisdiction and "only to act as prescribed by the judge's order." *Moss v. Kopp,* 559 F.3d 1155, 1163 (10th Cir. 2009) (quoting *Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir. 1990)). Defendant argues that "Detective Fusselman executed a facially valid search warrant within the scope of his jurisdiction." Doc. 39 p. 21.

Plaintiffs' response is that Fusselman omitted or falsified information to obtain the search warrant. The judge did not "prescribe" these falsehoods and omissions are the violations that occurred. Therefore, quasi-judicial immunity does not apply in this case.

## POINT III

### ~ *Flagrant Violations* ~

**A.    *Spackman* is Satisfied as to Claims Against Fusselman.**

Under *Spackman v. Board of Educ. of the Box Elder County Sch. Dist.,* 2000 UT 87, 16 P.3d 533, two prongs must be satisfied in order for the plaintiff to obtain monetary damages against a police officer for a constitutional violation. First, the constitutional clause must be self-executing. *Id.* at ¶1. Second, three elements must be satisfied: (1) there must be a flagrant violation of a constitutional right, (2) existing remedies must not redress their injuries, and (3) equitable relieve must be wholly inadequate to protect the rights. *Id.* at ¶¶23-5.

The Utah Supreme Court has explicitly established that Utah Constitution Art. 1, §§1, 7, and 14 are self-executing. *Spackman,* ¶10; *Jensen v. Cunningham,* 2011 UT 17, ¶¶62-3, 250 P.3d 465, 481-2. Furthermore, the Court has stated that "a constitutional provision that prohibits certain government conduct generally qualifies as a self-executing clause." *Spackman,* ¶8. Thus, Art. 1, §25 is also self-executing since it prohibits the government from violating rights that the people possess which are not enumerated in the state constitution.

A flagrant violation of rights has occurred when a defendant "violate[s] clearly established constitutional rights of which a reasonable person would have known." *Spackman,* ¶23. This is a similar standard to the clearly established prong required for federal §1983 claims. The paragraphs above concerning clear establishment of the law are hereby incorporated by reference.

*Spackman* requires that existing remedies do not redress a plaintiffs' injuries. *Id.* at ¶24. So, if Juan and Rosa Mercado's injuries would be fully compensated through other means, monetary damages are not allowed. This Court has ruled that damages accrued from a federal §1983 claim are considered as an existing remedy. *Asay v. Daggett County,* 2019 WL 181358 (D. Utah 2019). Thus, if the damages received from the federal claim redress Juan and Rosa's injuries, no monetary damages would be allowed for the Utah Constitutional claims.

*Spackman* likewise requires equitable relief to be wholly inadequate. *Spackman,* ¶25. Because the warrant has already been executed, no injunction or other form of equitable relief could possibly serve to protect Juan and Rosa's rights.

The Mercados fully satisfy all the *Spackman* elements to assert a Utah Constitutional violation.

## **CONCLUSION**

For the foregoing reasons, Defendant Fusselman's Motion for Judgment on the Pleadings must be denied. Detective Fusselman intentionally or recklessly omitted crucial factual information which would have vitiated probable cause.

Dated this 26th day of March 2021.

                **SYKES MCALLISTER LAW OFFICES, PLLC**

                */s/ Christina D. Isom*
                ROBERT B. SYKES
                C. PETER SORENSEN
                CHRISTINA D. ISOM
                *Attorneys for Plaintiff*

                **MARIO ARRAS LAW FIRM, PLLC**

                MARIO ARRAS
                *Attorney for Plaintiff*