IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUAN MERCADO; ROSA MERCADO; and ESTATE OF JOVANY MERCADO,<br><br>Plaintiffs,<br><br>v.<br><br>OGDEN CITY; BRANDON SEVENSKI; NIGIL BAILEY; KARSON GARCIA; JOHN POULSEN, and DET. TRENT FULLSEMAN,<br><br>Defendants. | **ORDER BIFURCATING TRIAL**<br><br>Case No. 1:20-cv-00090<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

This matter is scheduled for a jury trial to begin on October 5, 2026.[1] Now before the court is Plaintiffs' Motion to Bifurcate the issues of liability and damages for the trial.[2] For the reasons stated below, the court GRANTS the Motion.

## BACKGROUND[3]

This case concerns the fatal shooting of Jovany Mercado by Ogden City police officers.[4] Plaintiffs allege an individual called 911 and reported Jovany was walking around his neighborhood carrying an open pocketknife and appeared intoxicated or disoriented.[5] Four Ogden City Officers received a dispatch call and responded to Jovany's home.[6] One Officer

[1] Dkt. 182, *Trial Order*.

[2] Dkt. 189, *Plaintiffs' Motion to Bifurcate the Trial to Separately Consider Liability and Damages and Request for Expedited Briefing Schedule* (*Motion*).

[3] The court recites only the facts pertinent to the Motion. For a more detailed background of the facts, see Dkt. 65, *Memorandum Decision and Order: 1) Granting in Part and Denying in Part Ogden Defendants' Motion for Judgment on the Pleadings and 2) Granting Defendant Fusselman's Motion for Judgment on the Pleadings* (*Order*) at 9–17.

[4] *See* Dkt. 2, *Complaint*; *Order* at 1.

[5] *Order* at 10. Because Plaintiffs share the same last name, the court refers to them collectively by their last name and individually by their first name.

[6] *Id.* at 11.

reported the dispatch call relayed that Jovany had brought a pocketknife to an outdoor party and people were nervous and scared, although Jovany had not threatened anyone.[7]

When the Officers arrived, Jovany was in the back section of a carport behind his parents' home.[8] The Officers shouted to Jovany who slowly turned toward the Officers and began walking toward them with the knife in his hand.[9] The Officers yelled at Jovany to drop his pocketknife and raised their firearms, but Jovany continued to slowly walk towards them at a steady pace.[10] Jovany never verbally responded, and the Officers reported he stared blankly at them.[11] The Officers collectively fired twenty rounds, and Jovany fell to the ground.[12] After Jovany's death, the Office of the Medical Examiner directed an autopsy and toxicology report.[13] The toxicology report revealed that Jovany had marijuana, amphetamine, and methamphetamine in his body at the time of death.[14]

Jovany Mercado's Estate; Rosa Mercado, his mother and heir; and Juan Mercado, his father, heir, and personal representative, filed suit against Ogden City and the Officers involved in the shooting asserting several 42 U.S.C. § 1983 claims: excessive force under the Fourth Amendment of the United States Constitution and Article I, § 14 of the Utah Constitution; the failure to train and unconstitutional practices and procedures; and outrageous conduct that shocks the conscience.[15] The court subsequently dismissed all of the claims except the Plaintiffs' claims

---

[7] *Id*.

[8] *Id.* at 12–13.

[9] *Id.* at 13–14.

[10] *Id.* at 15–16.

[11] *Id*.

[12] *Id*.

[13] Dkt. 109-13, *Office of the Medical Examiner Report*; Dkt. 109-14, *Toxicology Report*.

[14] *Toxicology Report*.

[15] *See Complaint* ¶¶ 104–88. The *Complaint* also names Detective Trent Fusselman who worked with the Ogden City Police Department in a search of the Mercados' home, but the court subsequently dismissed all claims against Detective Fusselman. *See id.*; *Order* at 68.

on behalf of Jovany Mercado's Estate for excessive force in violation of the Fourth Amendment and Article I, § 14 of the Utah Constitution.[16]

After the court's Order on the Motion to Dismiss, both parties designated various expert witnesses for trial.[17] Along with other experts, Defendants designated toxicologist Christopher A. Reilly and forensic psychologist Tyler Durns[18] to explain the toxicology report, Jovany's mental health history, and "the effect of the substances on Jovany's body and mind."[19] Plaintiffs moved to exclude the testimony of Reilley and Durns.[20] The court heard oral argument on the motions on June 18, 2026. At the hearing, Plaintiffs argued the testimony of Reilly and Durns is prejudicial and not relevant to the claims the jury must decide,[21] and Defendants argued the testimony is relevant to damages and the reasonableness of the Officers' conduct.[22] The court denied the motions to exclude Reilly and Durns without prejudice.[23]

On July 9, 2026, Plaintiffs filed the instant Motion. The Motion is fully briefed and ripe for review.[24]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 42, "the court may order a separate trial of one or more separate issues," "[f]or convenience, to avoid prejudice, or to expedite and economize" the

[16] *Order* at 68.

[17] *See* Dkt. 102, *Plaintiffs' Disclosure of Expert Witness*; Dkt. 103, *Plaintiffs' Disclosure of Non-Retained Treating Expert Witness*; Dkt. 104, *Defendants' Expert Witness Disclosure*; Dkt. 106, *Plaintiffs' Disclosure of Rebuttal Expert Witness*; Dkt. 157, *Plaintiffs' Disclosure of Rebuttal Expert Witness*.

[18] Dkt. 104-1, *Defendants' Designation of Expert Witnesses* (listing Reilly and Durns as testifying experts).

[19] Dkt. 191, *Opposition to Plaintiffs' Motion to Bifurcate the Trial to Separately Consider Liability and Damages* (*Opposition*) at 5.

[20] Dkt. 109, *Motion to Exclude Christopher A. Reilly as an Expert*; Dkt. 124, *Motion to Exclude Tyler Durns, M.D. as an Expert Witness*.

[21] *Hearing Transcript* at 4–5, 9, 12.

[22] *Id.* at 4–5, 11, 20, 24.

[23] Dkt. 187, *Minute Entry*.

[24] *Motion*; *Opposition*; Dkt. 192, *Plaintiffs' Reply in Support of Their Motion to Bifurcate the Trial to Separately Consider Liability and Damages* (*Reply*).

proceeding.[25] "District courts have broad discretion in deciding whether to sever issues for trial . . . ."[26] Decisions to bifurcate "must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury."[27] The moving party bears the burden of showing bifurcation is proper.[28]

**ANALYSIS**

Plaintiffs' remaining claims assert violations of the same right guaranteed by both the United States and Utah Constitutions—the right of citizens "to be secure in their persons . . . against unreasonable . . . seizures."[29] Excessive force claims are determined under an objective "reasonableness standard" and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[30]

Plaintiffs seek to bifurcate the trial into two stages: a liability stage and then a damages stage.[31] They argue evidence of Jovany's mental health and substance abuse history is not relevant to excessive force claims because the jury must determine whether the Officers' conduct was objectively reasonable based on the information they knew at the time of the shooting.[32]

---

[25] Fed. R. Civ. P. 42(b).

[26] *Epps v. Christian*, 173 F.4th 1236, 1245 (10th Cir. 2026).

[27] *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996); *see also Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993) (stating "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party"); 9A Wright & Miller's Federal Practice & Procedure § 2388 (3d ed. 2020) (stating "the major consideration" of bifurcation is "which procedure is more likely to result in a just and expeditious final disposition of the litigation").

[28] 9A Wright & Miller's Federal Practice & Procedure § 2388 (3d ed. 2020) ("The party seeking separate trials . . . has the burden of proving that separation of the cases is necessary."); *see also Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2017 WL 3588656, at *2 (D.N.M. Jan. 9, 2017); *Patten v. Lederle Lab'ys*, 676 F. Supp. 233, 238 (D. Utah 1987).

[29] U.S. Const. amend. IV; Utah Const. art. I, § 14.

[30] *Graham v. Connor*, 490 U.S. 386, 395–97 (1989); *see also Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) ("We treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment. To establish a constitutional violation, the plaintiff must demonstrate the force used was objectively reasonable. Thus the '"reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (quoting *Graham*, 490 U.S. at 395–96)).

[31] *Motion* at 2; *Reply* at 2.

[32] *Motion* at 2, 4–5.

They further argue that combining the questions of liability and damages in one trial is prejudicial and will confuse the jury,[33] and separation is appropriate because liability and damages pose unrelated issues and will result in a more efficient trial.[34]

Defendants respond that the testimony of Reilly and Durns is relevant to liability because it will bolster the Officers' testimony as to "their beliefs regarding Jovany's intoxication, mental health status, and whether he was a threat were objectively reasonable."[35] Defendants also argue bifurcation will "greatly expand trial and take more time because the jury may be asked to deliberate twice."[36] The court agrees with Plaintiffs and concludes bifurcating the trial into a liability stage and a damages stage is appropriate in this case.

**I. Liability and Damages Are Separate Issues**

Bifurcation may be appropriate when "the issues are clearly separable."[37] Issues are separable when one is irrelevant absent a favorable ruling on the other.[38] Here, the question of damages will be relevant only if Defendants are found liable for the excessive force claims.

Defendants argue the testimony of Reilly and Durns is relevant to liability because it will give context to the Officers' testimony about what they observed and why their response to Jovany's behavior was objectively reasonable and does not "add any facts outside of the realm of facts known to the officers."[39] The court disagrees.

---

[33] *Id.* at 5–6.

[34] *Id.* at 6–8.

[35] *Opposition* at 2.

[36] *Id.* at 10.

[37] *Angelo*, 11 F.3d at 964.

[38] *See Mandeville v. Quinstar Corp.*, 109 Fed. App'x 191, 194 (10th Cir. 2004) (finding issues clearly separable when "the issue of piercing the corporate veil would have been unnecessary absent a ruling in [movant's] favor on the breach of contract or Title VII claim").

[39] *Opposition* at 3–4.

As stated above, whether the Officers are liable for excessive force is determined by an objective reasonableness standard.[40] The jury must assess whether the Officers acted reasonably from the "perspective of a reasonable officer on the scene" at the time of the shooting.[41] The Officers' perspective on scene is limited to the information they had at the time.[42] Here, at the time of the shooting the Officers had the information that was relayed to them by dispatch and what they observed during their encounter with Jovany. What drugs were in Jovany's body and his mental health history is information the Officers learned after the fact and lies in the realm of "20/20 hindsight."[43] Contrary to Defendants' contention, what substances were in Jovany's body, his mental health history, and how the relevant substances may affect a person with Jovany's mental conditions *are* facts that were not known to the Officers on scene.[44] Jovany's mental health and substance abuse history may be relevant to damages,[45] but the testimony of Reilly and Durns pertains only to information the Officers obtained after the shooting and is therefore not information the jury may consider in determining liability.

---

[40] *Graham*, 490 U.S. at 395–96.

[41] *Est. of Larsen*, 511 F.3d at 1259–60.

[42] *See id.*

[43] *Graham*, 490 U.S. at 396.

[44] *See Opposition* at 4; Dkt. 109-1, *Reilly Expert Report* (stating his testimony will consist of a summary and opinion of the toxicology report and explaining the properties and effects of methamphetamine and spice "on a person, and specifically the mental health issues Jovany allegedly suffered from"); Dkt. 124-1, *Durns Report* (concerning "clinical and forensic insight into the decedent's psychological functioning and relative risk of violence at the time of his death").

[45] *See United States v. Gray*, 199 F.2d 239, 243 (10th Cir. 1952) ("[O]n the failure of plaintiff to adduce evidence tending to show her earning capacity, if any, after the intervention of her mental illness, there was no sustainable basis of fact on which to predicate damages for loss of earnings."); *see also Stella v. Davis Cnty.*, No. , 2022 WL, at *6–7 (D. Utah July 1, 2022) (permitting the defendants to argue in closing argument the jury could take into account the plaintiff's drug use in evaluating damages); *Strickland v. City of Las Cruces*, No. 2:23-cv-00116-KG-KRS, 2026 WL 241859, at *2, *4 (D.N.M. Jan. 29, 2026) (concluding evidence of the plaintiff's mental health diagnoses and alcohol use was relevant to rebut the plaintiff's claim for damages); *Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, WL 2013 WL 1129429, at *3 (D. Colo. Mar. 18, 2013) (concluding mental health records were relevant for calculating damages).

**II. Bifurcation Serves Judicial Economy**

When a trial presents separate issues and it is unnecessary to address one absent a favorable ruling on the other, bifurcation serves judicial economy.[46] Here the question of damages will be relevant only if Defendants are found liable for the excessive force claims. Thus, should the jury conclude Defendants are not liable, the jury need not hear nor consider the testimony of Reilly and Durns. Splitting the trial into two stages will thus streamline and potentially shorten the trial.

Additionally, based on the briefing and oral argument on the parties' motions to exclude experts, the court is persuaded bifurcation may reduce the time spent on objections and sidebars in trial. Testimony from Reilly and Durns is likely to elicit objections that the witnesses are wading into irrelevant and prejudicial territory. And because the damages stage, if reached, would immediately follow the liability stage, the potential impact to witness timing and jury deliberation is unlikely to be overly burdensome. In short, the court concludes bifurcation promotes judicial efficiency and economy.

**III. Bifurcation Avoids Prejudice**

The court's priority in considering bifurcation is ensuring "all parties receive a fair trial."[47] The court must determine "which procedure is more likely to result in a just" trial.[48] Here, both parties argue they would be prejudiced by an unfavorable decision on the Motion.[49] Plaintiffs argue the testimony regarding Jovany's mental health conditions, his substance abuse history, the substances present in his body at the time of his death, and the interplay between the

---

[46] *See Mandeville*, 109 Fed. App'x at 194 (finding judicial economy is served when an issue is only relevant upon a favorable ruling on the other separable issues).

[47] *Talley v. City & Cnty. of Denver*, 2021 WL 5514592, at *2 (D. Colo. Jan. 29, 2021); *see also Angelo*, 11 F.3d at 964 (stating it is an abuse of discretion if bifurcation "is unfair or prejudicial to a party").

[48] 9A Wright & Miller's Federal Practice & Procedure § 2388 (3d ed. 2020).

[49] *Motion* at 6; *Reply* at 12; *Opposition* at 9.

two poses significant prejudice against them.[50] Specifically, Reilly and Durns' testimony concerning information the Officers learned only after their encounter with Jovany could taint the jury's determination of reasonableness by "imputing knowledge to the Officers that they simply did not have."[51] On the other hand, Defendants contend Plaintiffs have put Jovany's mental health and substance abuse at issue and prohibiting Reilly and Durns from testifying as to liability would deprive them of presenting a meaningful defense.[52] The court agrees with Plaintiffs.

The Officers are certainly entitled to a meaningful defense. However, because the testimony of Reilly and Durns is not relevant to liability,[53] they are not prejudiced from reserving their testimony for the damages stage. Defendants maintain "[t]he evidence is necessary to rebut Plaintiffs' arguments regarding Jovany's mental health status."[54] But neither party will be permitted to introduce any evidence not relevant to what the Officers knew at the time of the shooting. Accordingly, Plaintiffs will likewise be prohibited from introducing evidence regarding Jovany's mental health or substance abuse history during the liability stage of the trial. The rule applies equally to both parties.

## CONCLUSION

For the reasons stated above, the Motion is granted.[55] The trial will proceed in two stages. The first stage will be limited to whether Defendants are liable for the excessive force claims. Should the jury find any Defendants liable on a claim, the trial will immediately proceed to stage two to determine damages.

---

[50] *Motion* at 5–6; *Reply* at 12.

[51] *Motion* at 6.

[52] *Opposition* at 6.

[53] *See supra* Section I.

[54] *Id.* at 5.

[55] Dkt. 189.

SO ORDERED this 25th day of August 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge